UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LYNN L. ROSS and MARGARET A. ROSS,

      Plaintiffs,

v.                                                                                          Case No. 1:14-CV-627

WELLS FARGO BANK, N.A., U.S. BANK,                      HON. GORDON J. QUIST
N.A., as Trustee on behalf of the Bear Sterns
Asset Backed Securities I Trust 2004-AC6,
Asset-Backed Certificates 2004-AC6, and
JPMORGAN CHASE BANK, N.A., the
purported holder of the Bear Sterns Asset
Backed Securities I Trust 2004-AC6,
Asset Backed Certificates Series 2004-AC6,

      Defendants.
_____/

## OPINION

Plaintiffs, Lynn L. Ross and Margaret A. Ross, filed a twelve-count complaint against Defendants, Wells Fargo Bank, N.A. and U.S. Bank, N.A., as Trustee on behalf of the Bear Sterns Asset Backed Securities I Trust 2004-AC6, Asset-Backed Certificates Series 2004-AC6,[1] in the Clinton County Circuit Court on April 30, 2014, alleging claims that arise out of U.S. Bank's nonjudicial foreclosure of a mortgage on the Rosses' property.

Defendants timely removed the case to this Court on June 11, 2014, alleging both federal question and diversity jurisdiction as the basis for the removal. Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. In response, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), the Rosses filed an amended

---

[1] The Rosses also named JPMorgan Chase Bank, N.A., the purported holder of the Bear Stearns Asset Backed Securities I Trues 2004-AC6, Asset-Backed Certificates Series 2004-AC6, as a defendant. The Rosses have since stipulated to the dismissal of JP Morgan Chase Bank, N.A. with prejudice. (Dkt. ## 9, 10.)

complaint.[2] (Dkt. # 13.) Defendants now move to dismiss the amended complaint for failure to state a claim. For the reasons set forth below, the Court will grant Defendants' motion and dismiss the amended complaint with prejudice.[3]

## I. BACKGROUND

The following facts are based on the allegations in the Rosses' amended complaint, the documents attached to the amended complaint, matters of public record, and exhibits attached to Defendants' motion that are referred to in the Amended Complaint.[4]

On August 23, 2004, Lynn Ross obtained a loan from Union Federal Bank of Indianapolis ("UFB") in the amount of $192,000.00 and executed a Note in favor of UFB promising to repay the debt. (Dkt. # 16-2.) To secure repayment of the debt, both Lynn Ross and Margaret Ross granted a Mortgage to UFB on real property commonly known as 1494 E. Webb Road, Dewitt, Michigan 48820. (Dkt. # 16-3.) The Mortgage was recorded in the Clinton County Register of Deeds on August 26, 2004. Subsequently, UFB sold the loan to Bear Sterns, which bundled the loan together with other mortgage loans in a trust and "securitized" them as "mortgage-backed" or "asset-backed" securities. (Am. Compl., dkt. # 13, ¶ 9.)

---

[2] The Rosses' initial twelve-count complaint consisted of 253 paragraphs and spanned 50 pages. The amended complaint deleted four counts and consists of 232 paragraphs spanning 40 pages. The remaining allegations are not materially different from those in the initial complaint.

[3] The Court declines to grant Defendants' request for oral argument because the issues are fully briefed and have been addressed in numerous prior opinions by the Sixth Circuit, Michigan federal district courts, and Michigan state courts. Therefore, oral argument is unnecessary.

[4] Although a court is normally precluded from considering matters outside of the pleadings in addressing a motion under Rule 12(b)(6), courts may consider various documents without converting the motion to a motion for summary judgment. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

On December 21, 2005, UFB assigned the Mortgage to Mortgage Electronic Registration Systems, Inc. (MERS). The assignment was recorded in the Clinton County Register of Deeds on November 24, 2008. (Dkt. # 16-4.) On June 12, 2009, MERS assigned the Mortgage to U.S. Bank, as Trustee for BSABS 2004-AC6. The assignment was recorded in the Clinton County Register of Deeds on June 23, 2009. (Dkt. # 16-5.) MERS executed a corrective assignment of the Mortgage to U.S. Bank on March 21, 2013, to correct the name of the trust for which U.S. Bank was acting as trustee. The corrective assignment was recorded in the Clinton County Register of Deeds on March 25, 2013. (Dkt. #16-6.)

At some point, the Rosses defaulted on the loan. The Rosses allege that they requested and applied for a loan modification from the loan servicer, Wells Fargo, d/b/a America's Servicing Company, but the servicer repeatedly told the Rosses that it had not received their completed loan modification application. (Am. Compl., dkt. # 13 at Page ID#395, ¶ 51.) The Rosses further allege that, in an additional act of "fraud and bad faith," when the servicer finally offered them a loan modification, it was for an amount that far exceeded the balance of their original loan. (*Id.* ¶¶ 57–59.) On March 11, 2013, the mortgage servicer sent the Rosses a notice pursuant to M.C.L. § 600.3205a advising them of the availability of the statutory loan modification procedure. (Am. Compl., dkt. # 13 at Page ID#397, ¶ 61; dkt. # 16-7 at Page ID #554.) Subsequently, U.S. Bank initiated a foreclosure proceeding by publishing notice of the foreclosure sale in accordance with the foreclosure by advertisement statute. *See* M.C.L. § 600.3208. (Dkt. # 16-7 at Page ID##551–52.) On December 18, 2013, a sheriff's sale was held, at which U.S. Bank purchased the Property for $137,700.00.[5] (Dkt. # 16-7.)

---

[5] In June 2013, prior to the sheriff's sale, the Rosses filed a lawsuit in state court, which was later dismissed without prejudice by stipulated order. (Dkt. #16-9.) Following the dismissal, Wells Fargo offered the Rosses a loan modification, which they rejected. Following the rejection, U.S. Bank proceeded with the foreclosure sale.

3

The Rosses filed the instant lawsuit in Clinton County Circuit Court on April 30, 2014. On May 23, 2014, the Rosses obtained a preliminary injunction from the state court, which enjoined the June 18, 2014 expiration of the redemption period.[6] (Dkt. # 1-1 at Page ID 130–31.) Defendants removed the case to this Court on June 12, 2014.

## II. Motion Standard

As noted above, Defendants have moved to dismiss pursuant to Rule 12(b)(6). The Rosses contend that the Court should deny Defendants' motion under Rule 12(d) because it presents matters outside the pleadings—including "unethical and scandalous references" to language on Gantz Associates' (the Rosses' counsel) website.[7] The Rosses further argue that the Court should not convert Defendants' motion to a motion for summary judgment because they have not had the opportunity to conduct discovery. Neither argument is persuasive. Defendants' motion does not run afoul of Rule 12(d) (allowing a court to treat a Rule 12(b)(6) or 12(c) motion as a Rule 56 motion if "matters outside the pleadings are presented to and not excluded by the court") because it is based solely on the allegations in the amended complaint and materials that the Court is authorized to consider in deciding a motion to dismiss. *See Frisch v. Nationwide Mut. Ins. Co.*, 553

---

[6] Defendants note that the Rosses obtained the preliminary injunction prior to the time that counsel was retained and without notice to Defendants, even though the Rosses' counsel was aware that the Dykema Gossett firm had represented Defendants in the prior lawsuit.

[7] The Rosses' counsel takes Defendants to task for citing language that previously appeared on Gantz Associates' website suggesting that, even without any valid defenses, a borrower can delay an inevitable foreclosure proceeding and eviction simply by filing a meritless lawsuit. The Rosses' counsel does not deny that Gantz Associates' website previously featured the statement, but he asserts that because Gantz Associates removed the statement from its website in early 2013—before the Rosses ever met their instant counsel—Defendants' reference to it was improper. Defendants' point, however, is lost on the Rosses' counsel. Defendants cited the statement solely as additional proof that counsel filed the amended complaint not for a legitimate purpose—to rectify deficient allegations that would possibly save the complaint from dismissal—but instead to delay a judicial resolution of the proceeding and allow the Rosses to remain in their home for additional time, the goal previously expressed on Gantz Associates' website. Having compared the amended complaint to the original complaint, the Court finds Defendants' assessment accurate because, except for the omission of certain claims, the amendments were largely immaterial. Rule 15(a)(1)(B) was intended to allow plaintiffs to cure pleading deficiencies in response to Rule 12 motions, but it can be abused where the sole purpose of an amendment is to delay the final outcome.

F. App'x 477, 481 (6th Cir. 2014) ("In ruling on a motion to dismiss, this Court may consider [only] the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." (internal quotation marks omitted) (alterations in original)). Defendants' comments about, and citation of, statements that were on Gantz Associates' website are immaterial to the merits of the Rosses' claims. Thus, the motion is proper under Rule 12(b)(6) and the Court need not convert it.

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)). The court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

The amended complaint alleges the following claims: (1) declaratory judgment that the foreclosure violates M.C.L. § 600.3204(1) and (3); (2) declaratory judgment that the foreclosure violates the loan modification provisions of the foreclosure statute, M.C.L. §§ 600.3204(4), 600.3205a, and 600.3205(c); (3) breach of the Mortgage; (4) intentional fraud; (5) constructive fraud; (6) tortious interference with contractual relations; (7) civil conspiracy; and (8) violation of the Real Estate Settlement Procedures Act (RESPA). Because the Rosses fail to address their RESPA claim in their response, the claim is waived and the Court need not address it. *See Reed v. Procter & Gamble Mfg. Co.*, 556 F. App'x 421, 427–28 (6th Cir. 2014) ("Because Reed's brief contains no discussion of his removal from his extended role position in the context of disparate treatment, we do not address this claim.").

**A.     Invalid Foreclosure Claims**

In their opening brief, Defendants argued that the Rosses' claims for declaratory relief concerning the validity of the foreclosure sale must fail because the Rosses cannot demonstrate fraud or irregularity in the foreclosure process. In Michigan, once the redemption period has expired, the foreclosure may be set aside only if the mortgagor makes a clear showing of fraud or irregularity. *Overton v. Mortg. Elec. Registration Sys.*, No. 284950, 2009 WL 1507342, at *1 (Mich. Ct. App. May 28, 2009) (per curiam) (citing *Schulthies v. Barron*, 16 Mich. App. 246, 247–48, 167 N.W.2d 784, 785 (1969) (per curiam)); *see also Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) ("Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor has made 'a clear

showing of fraud, or irregularity.'") (quoting *Schulthies*, 16 Mich. App. at 248, 167 N.W.2d at 785). The fraud or irregularity must be present in the foreclosure process itself. *Williams v. Pledged Prop. II, LLC*, 508 F. App'x 465, 468 (6th Cir. 2012).

The Rosses contend that Defendants' argument misrepresents the applicable law to the Court because the Rosses filed the instant lawsuit before the redemption period expired and obtained a preliminary injunction from the state court enjoining the expiration of the redemption period. Thus, the Rosses argue, the redemption period has not expired and they need not demonstrate fraud or irregularity to set aside the foreclosure. It is well established that the filing of a lawsuit does not toll the redemption period. *Bryan v. JPMorgan Chase Bank*, 304 Mich. App. 708, 714, 848 N.W.2d 482, 485 (2014) (per curiam). The Rosses cite no authority for the proposition that a court may enjoin the running of the redemption period absent a finding that the mortgagor has made a clear showing of fraud or irregularity—a finding the state court did not make in its preliminary injunction order. Regardless, the Court need not decide whether the preliminary injunction order actually tolled the redemption period because the Rosses cannot show that the foreclosure was invalid.

The Rosses allege that the foreclosure was invalid on two grounds. First, they contend that securitization of the loan, or defects in that process, render the foreclosure invalid. This argument lacks merit, as courts have repeatedly rejected similar securitization claims. *See Khoshiko v. Deutsche Bank Trust Co. Americas*, No. 12-CV-14717, 2013 WL 5346400, at *4 (E.D. Mich. Sept. 23, 2013) (noting that "the Michigan courts have rejected arguments asserting that the mortgagee of record cannot foreclose because of 'securitization' or 'lack of capacity'"); *Jones v. Bank of Am.*, No. 12-11608, 2012 WL 5412236, at *3 (E.D. Mich. Nov. 6, 2012) ("Federal courts in Michigan have found that securitzation of a mortgage does not sever interest in the property."); *Mitchell v. Mortg. Elec. Registration Sys., Inc.*, No. 1:11-cv-425, 2012 WL 1094671, at *3 (W.D. Mich. Mar.

30, 2012) ("Plaintiff's theory regarding 'securitization' has been rejected as a basis for invalidating a MERS assignment."). Moreover, the Michigan Supreme Court has held that splitting of the note and mortgage does not invalidate a foreclosure. *See Residential Funding Co. v. Saurman*, 490 Mich. 909, 910, 805 N.W.2d 183, 184 (2011) ("It has never been necessary that the mortgage should be given directly to the beneficiaries. The security is always made in trust to secure obligations, and the trust and the beneficial interest need not be in the same hands. . . . The choice of a mortgagee is a matter of convenience.") (internal quotation marks omitted); *Kemp v. Resurgent Capital Servs.*, No. 13-11794, 2013 WL 5707797, at *5 (E.D. Mich. Oct. 21, 2013) (stating that "Kemp's 'note-splitting' theory fails to state a plausible claim for relief"). The Rosses' reliance on *Gregory v. CitiMortgage, Inc.*, 890 F. Supp. 2d 791 (E.D. Mich. 2012), is misplaced. In *Gregory*, the court specifically rejected the plaintiff's claim that the foreclosure was invalid because Bank of America—the foreclosing party—did not hold the note. *Id.* at 800–01 (noting that "[i]f an entity that holds the mortgage but not the loan may foreclose, an obvious corollary is that the separation of the mortgage and the note does not invalidate either"). The portion of the *Gregory* opinion that the Rosses cite addressed the plaintiff's breach of contract claim based on paragraph 20 of the mortgage at issue. *Id.* at 804–806. Although paragraph 20 of the Rosses' Mortgage contains the same language as paragraph 20 of the mortgage at issue in *Gregory*, in the instant case the Rosses do not allege that Defendants breached paragraph 20 of their mortgage.[8]

The Rosses also argue that the foreclosure was invalid because U.S. Bank foreclosed without a record chain of title, as required by M.C.L. § 600.3204(c). As set forth above, the assignments

---

[8] Although the *Gregory* court allowed the breach of contract claim to proceed, it recognized that other courts have dismissed breach of contract claims based on the same language for failure to state a claim. *Gregory*, 890 F. Supp. 2d at 805–06; *see also Rishoi v. Deutsche Bank Nat'l Trust Co.*, No. 12-12957, 2013 WL 142258, at *6 (E.D. Mich. Jan. 11, 2013) (rejecting breach of contract claim based on paragraph 20 and noting that "[p]laintiffs do not identify a single term of the Contract requiring notice of the assignments").

8

from UFB to MERS, and from MERS to U.S. Bank, were executed and recorded prior to the date of the foreclosure sale. Therefore, a record chain of title existed in accordance with § 600.3204(c).[9] The Rosses contend that U.S. Bank lacked a valid record chain of title because the assignments were signed by so-called "robo-signers" and were therefore fraudulent. This argument fails because the Rosses were not parties to the assignments and therefore lack standing to challenge their validity. *Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010) (noting that "there is ample authority to support the proposition that a litigant who is not a party to an assignment lacks standing to challenge that assignment") (internal quotation marks omitted). In other words, as the Sixth Circuit has recently explained, "[a] person who is neither a party to the contract nor in privity with the parties, and who is not a third-party beneficiary of the contract, is said to lack 'standing' to enforce the contract's terms and to challenge its validity." *Slorp v. Lerner, Sampson & Rothfuss*, __ F. App'x __, 2014 WL 4800100, at *4 (6th Cir. Sept. 29, 2014). The *Livonia* court nonetheless recognized that a mortgagor is permitted to challenge an assignment's validity in certain circumstances:

> An obligor "may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void." 6A C.J.S. *Assignments* § 132 (2010). These defenses include nonassignability of the instrument, assignee's lack of title, and a prior revocation of the assignment, none of which are available in the current matter. *Id.* Obligors have standing to raise these claims because they cannot otherwise protect themselves from having to pay the same debt twice. *Id.*

*Livonia Props. Holdings, LLC*, 399 F. App'x at 102. The Rosses' argument that the assignments are invalid because they were robo-signed and thus fraudulent is not one of the defenses permitted by *Livonia*, and thus, they lack standing to challenge the assignments. *See Connolly v. Deutsche*

---

[9] Contrary to the Rosses' assertion, *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 825 N.W.2d 329 (2012), and *Sobh v. Bank of America, N.A.*, No. 308441, 2013 WL 2460022 (Mich. Ct. App. June 6, 2013) (per curiam), are not identical to this case, nor do they support the Rosses' challenge to the assignments. In both *Kim* and *Ross*, there was no record chain of title because Chase had not recorded an assignment of mortgage evidencing its acquisition of the mortgage from Washington Mutual. *See Kim*, 493 Mich. at 113, 825 N.W.2d at 336; *Sobh*, 2013 WL 2460022, at *1.

9

*Bank Nat'l Trust Co.*, __ F. App'x __, 2014 WL 4435962, at *5 (6th Cir. Sept. 9, 2014) (concluding that the plaintiff lacked standing under *Livonia* to challenge the validity of mortgage assignments on the basis that "the robo-signatures are forged and should not be given effect because such fraud will render the chain of title voidable"); *Warren v. Nationstar Mortg. LLC*, No. 13-15015, 2014 WL 3709100, at *6 (E.D. Mich. July 28, 2014) (holding that "Plaintiff does not have standing to challenge any flaw (based on alleged robo-signing) in the Assignment between MERS and Defendant where the record chain of title is clear and Plaintiff was not a party to the assignment").

Even if the Rosses could show that the foreclosure failed to comply with M.C.L. § 600.3204, any defect would render the foreclosure voidable, rather than void *ab initio*. *Kim v. JPMorgan Chase Bank, N.A.*, 439 Mich. 98, 115, 825 N.W.2d 329, 337 (2012). The Rosses must therefore allege prejudice resulting from noncompliance with the foreclosure requirements.[10] *Id.*; *see also Conlin*, 714 F.3d at 362 ("Post-*Kim*, Michigan mortgagors seeking to set aside a sheriff's sale under § 600.3204 will have to demonstrate prejudice (e.g., double liability).") In particular, *Kim* holds that a plaintiff "must show that [he] would have been in a better position to preserve [his] interest in the property absent defendant's noncompliance with the statute." *Kim*, 439 Mich. at 116, 825 N.W.2d at 337. Plaintiffs have failed to allege the requisite prejudice. Plaintiffs contend that they have been prejudiced because they have been forced to pay attorney fees to save the Property from foreclosure and because they were deprived of the opportunity to explore other options, such as a short sale, a deed in lieu of foreclosure, or a bankruptcy proceeding. None of these allegations suffice to show that the Rosses would have been in a better position to preserve their interest in the Property but for

---

[10] The Rosses contend that they are not required to allege that they were prejudiced by noncompliance with the foreclosure requirements because the state-court preliminary injunction has extended the six-month redemption period. However, *Kim*, did limit the prejudice requirement to challenges asserted after the expiration of the redemption period.

10

the alleged defects. Moreover, the redemption period has been extended, yet the Rosses have not redeemed or even alleged that they have the financial ability to redeem.

The Rosses' claim that the foreclosure is invalid based on U.S. Bank's failure to comply with the modification provisions of the foreclosure statute also fails. The Rosses admit that U.S. Bank's foreclosure counsel sent them the notice required by M.C.L. § 600.3205a(1). (Dkt. # 13 at Page ID#387, ¶ 61.) The Rosses allege, however, that they contacted U.S. Bank's foreclosure counsel, but foreclosure counsel never provided the "requisite program, process and/or guidelines." (*Id.* ¶¶ 62–63.) The Sixth Circuit has held that a plaintiff's bare assertion that he requested a meeting with the foreclosing party's representative, as required by M.C.L. § 600.3205b to trigger the mortgagee's duty to engage in loan modification negotiations, is insufficient to satisfy the *Trombly*/*Iqbal* pleading standard. *See Farnsworth v. Nationstar Mortg., LLC*, 569 F. App'x 421, 429 (6th Cir. 2014). The *Farnsworth* court observed that the plaintiffs' "bare allegation that they satisfactorily requested a meeting under Mich. Comp. Laws § 3205b, unsupported by any additional facts, is just the sort of conclusory allegation that is insufficient to survive a motion to dismiss." *Id.* For the same reasons, the Rosses' bare allegation that they contacted U.S. Bank's foreclosure counsel to request a meeting is insufficient to survive a motion to dismiss. Moreover, the sole remedy for a foreclosing party's failure to engage in the loan modification process is an action to enjoin the foreclosure sale and conversion of the foreclosure by advertisement to a judicial foreclosure proceeding. M.C.L. § 600.3205c(8). As the Sixth Circuit has recently noted, Section 600.3206c(8) "permits an injunction against a non-judicial mortgage foreclosure only if a lawsuit is commenced before the foreclosure sale occurs." *Rugiero v. Nationstar Mortg., LLC*, __ F. App'x __, 2014 WL 4549003, at *3 (6th Cir. Sept. 15, 2014). Because the Rosses filed this case months after the foreclosure sale occurred, the sole remedy of conversion is unavailable. *See Holliday v. Wells Fargo*

11

*Bank, NA*, 569 F. App'x 366, 370 ("Insofar as Holliday indirectly seeks a conversion of the foreclosure by advertisement to a judicial foreclosure, it cannot be done. Holliday brought her claim only after the foreclosure sale had taken place; hence, there is no foreclosure to convert.").

Thus, Counts 1 and 2 must be dismissed.

**B.     Breach of Contract Claim**

In their breach of contract claim set forth in Count 3, the Rosses allege that Defendants breached paragraphs 1 through 5, 15, and 25 of the Mortgage by "failing to send required notices, failing to credit Plaintiff's account for payments made, and failing to communicate with Plaintiffs." (Dkt. # 13 at Page ID## 30-31, ¶¶ 174–75.) These conclusory allegations, without accompanying factual development, are insufficient to state a claim. *See Alshaibani v. Litton Loan Servicing, LP*, 528 F. App'x 462, 465 (6th Cir. 2013) ("As a practical matter, Plaintiffs' factually unadorned allegation that Litton misapplied their payments does no more to render their claim plausible than would a simple legal conclusion that Litton breached the mortgage."); *Thill v. Ocwen Loan Servicing, LLC*, __ F. Supp. 2d __, 2014 WL 1274080, at *4 (E.D. Mich. Mar. 31, 2014) (concluding that the plaintiffs' allegation that the defendants failed to credit payments they made fell "well short" of stating a claim for breach of contract because the complaint omitted basic information, such as "what payments were made, when or how they were supposed to be credited, what mistakes were made, why they were considered mistakes under the contract, etc." (internal quotation marks omitted)). Thus, Count 3 must be dismissed.

**C.     Fraud Claims**

In Counts 4 and 5, the Rosses alleges claims of intentional fraud and constructive fraud. Their theory is that Defendants engaged in a conspiracy to defraud Plaintiffs by tricking them into

foreclosure, at which point Defendants would gain a windfall by obtaining a bailout from the federal government or cashing in on private mortgage insurance. (Dkt. # 13 at Page ID## 416-18, ¶¶ 179, 184, 188.) In particular, the Rosses allege that the servicer—Wells Fargo—misrepresented to them that if they agreed to stop making payments and apply for a modification, Defendants would grant them a modification for a lower payment and not foreclose. (*Id.* at Page ID#417, ¶ 180.) The Rosses also allege that Defendants engaged in further acts of fraud by relegating them to "Paperwork Hell"—a situation where the servicer seeks to maintain the borrower in a lengthy state of limbo in the modification review process by continually denying receipt of the borrower's paperwork—in order to ensure that they would be so deep in default that they would never be able to cure the default. (*Id.* at Page ID##395, 418, ¶¶ 50–54, 189.) In addition, the Rosses claim that Defendants engaged in fraud by offering them a true loan modification but then switching to one that increased their principal balance and interest rate and extended their nine-year term to thirty years. (*Id.* at Page ID#419, ¶¶ 197–98.) Finally, the Rosses contend that Defendants engaged in fraud by fabricating a "phony paper trail that would suffice as a 'record chain of title', by creating the Fraudulently Backdated Assignment, and by forging both the 1st Forged Assignment and 2nd Forged Assignment, and passing the same off as legitimate documents, in preparation for the sheriff's sale." (*Id.* at Page ID#420, ¶ 203.)

      The Rosses' fraud claims fail as a matter of law because they fail to comply with Rule 9(b)'s particularity requirement, which expressly applies to fraud claims. The Sixth Circuit interprets Rule 9(b) to require a plaintiff to allege, at a minimum, "the time, place and contents of the misrepresentation(s) upon which he relied." *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984). More specifically, the complaint must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

13

made, and (4) explain why the statements were fraudulent.'" *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp. 2d 879, 883 (N.D. Ohio 1998)). The amended complaint's general allegations fail to comply with these requirements. The Rosses fail to identify who made the statements, when and where they were made, how they were made, and why the speaker knew they were false. Other courts confronted with precisely the same fraud allegations asserted by the Rosses' counsel have likewise concluded that they fall far short of Rule 9(b)'s requirements. *See Thill*, 2014 WL 1274080, at *5 (stating that "[t]his Court's conclusions . . . regarding the sufficiency of such fraud claims brought by Gantz Associates do not stand alone in this District," and citing numerous other decisions rejecting similar fraud claims asserted by Gantz Associates in mortgage foreclosure cases). Therefore, Counts 4 and 5 will be dismissed.

D.     **Tortious Interference Claim**

In Count 6, the Rosses allege a claim for tortious interference with contractual relations. The elements of a tortious interference with contract claim are: "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Knight Enters. v. RPF Oil Co.*, 299 Mich. App. 275, 280, 829 N.W.2d 345, 348 (2013) (citations omitted). The Rosses allege that "[a]s a result of the foregoing, the Trustee [U.S. Bank] and/or Holder have caused the Servicer [Wells Fargo] to breach the contract, as a direct result of the fact that they seek to effectuate a bailout or cash in on a private mortgage insurance policy, via the foreclosure of the Mortgage." (Dkt. # 13 at Page ID#423, ¶ 221.) As is true with the breach of contract claim, the Rosses' conclusory allegations for their tortious interference claim—which are based on the breach of contract allegations—are legally insufficient to state a claim. This claim will be dismissed for the same reasons.

### E.     Civil Conspiracy

Finally, the Rosses' civil conspiracy claim alleged in Count 7 will be dismissed because the Rosses fail to allege a separate, actionable tort. *See Early Detection Ctr., P.C. v. New York Life Ins. Co.*, 157 Mich. App. 618, 632, 403 N.W.2d 830, 836 (1986) (per curiam) ("[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable, tort.").

### IV.  CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss and dismiss the Rosses' amended complaint with prejudice.

An Order consistent with this Opinion will be entered.


Dated:  October 22, 2014                              /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE